IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| AMIKHET EN MATTI, | ) | |
| | ) | |
| Petitioner, | ) | 4:03cv3258 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| ROBERT HOUSTON, | ) | |
| | ) | |
| Respondent. | ) | |

This matter is before the court on the Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by the petitioner, Amikhet En Matti, f/k/a Warren S. Coker ("§ 2254 petition"). The petitioner challenges his convictions for second degree sexual assault on a child and sexual assault of a child (contact). The decision of the Nebraska Court of Appeals on the petitioner's direct appeal is reported at State v. Coker, 2000 WL 943924 (Neb. App. 2000). The petitioner did not seek further review in the Nebraska Supreme Court on direct appeal. He later filed a postconviction action, which resulted in an unreported decision by the Nebraska Court of Appeals (see filing no. 14-6, Memorandum Opinion and Judgment on Appeal filed May 6, 2002), followed by the Nebraska Supreme Court's denial of further review.

**Background**

The following background information is quoted from the Nebraska Court of Appeals' decision affirming the petitioner's conviction on direct appeal:

> On February 16, 1999, Coker was charged by information with first degree sexual assault on a child, second degree sexual assault on a child, and two counts of sexual assault of a child (contact) for incidents having occurred between October 1 and 31, 1998, in Sarpy County, Nebraska. One count of sexual assault of a child (contact) was dismissed upon motion of the county attorney. Coker waived his right to a jury trial on April 2, 1999.
>
> Coker was tried on the remaining counts of the information on June 21 and 30, 1999. On July 1, the Sarpy County District Court found Coker not guilty of first degree sexual assault on a child and guilty of the remaining charges of second degree sexual assault on a child and sexual assault of a

1

child (contact). Coker was sentenced to 20 years' imprisonment on the charge of second degree sexual assault on a child and 5 years' imprisonment on the charge of sexual assault of a child (contact), to be served concurrently.

The facts leading to Coker's convictions are that Coker; his wife, Angela; and Angela's four children moved to 2505 Sidney Street in Bellevue, Sarpy County, Nebraska, sometime in the middle of October 1998. Seven-year-old A.C., the oldest of the four children, is Angela's daughter and Coker's stepdaughter. On November 2, Angela noticed some bumps on A.C.'s anal and vaginal area. A.C. was taken to the emergency room at St. Joseph Hospital in Omaha, Nebraska, on November 4 because she was having difficulty urinating, was suffering from general malaise, was not feeling well, and had a low-grade fever, abdominal pain, weakness, body aches, and nausea.

A.C. was examined at the hospital by Dr. Annamaria Nagy. During the examination, Nagy noticed a tear in A.C.'s vaginal area and determined that A.C. had herpes type 2, a sexually transmitted disease. The evidence also shows that Coker has herpes type 2. Nagy's herpes diagnosis was confirmed by Dr. Kathy Edwards. Edwards, based upon her education, training, and experience in dealing with children who are victims of abuse, opined that A.C. had been sexually abused. Coker was then arrested for sexually assaulting A.C.

State v. Coker, 2000 WL 943924 at *1 (Neb. App. 2000).

## The Petitioner's § 2254 Claims

In his § 2254 petition, the petitioner raises the following § 2254 claims:

1. The prosecutor failed to prove venue.

2. The trial court erred in admitting Dr. Kathy Edwards' expert testimony linking the victim's herpes type 2 to inappropriate sexual contact, when the testimony lacked foundation (BOE[1] Vol. II at 463-64).

3. The trial court erred in admitting Dr. Edwards' expert opinion on the ultimate issue, i.e., that the victim had been sexually abused (BOE Vol. II at 470-71).

4. The petitioner was convicted on insufficient evidence.

---

[1] I shall refer to the three-volume Bill of Exceptions in this case as BOE Vol. ___ at [page(s)].

2

5. The petitioner received ineffective assistance of counsel when his trial attorney failed to use a lab report to rebut the testimony of Chempithra V. Jacob, Ph.D., regarding the presence of herpes type 2 antibodies in the plaintiff's blood.

6. The petitioner received ineffective assistance of counsel when his trial attorney failed to object to the use of trial exhibit 17 despite mishandling of the exhibit.

7. The petitioner received ineffective assistance of counsel when his trial attorney failed to familiarize himself with the Jacob deposition transcript and failed to object on the basis of foundation to the deposition testimony of Dr. Jacob regarding trial exhibit 25.

8. The petitioner received ineffective assistance of counsel when his trial attorney failed to investigate the petitioner's employment as a potential alibi.

9. The petitioner received ineffective assistance of counsel when his trial attorney failed to raise a hearsay objection to the testimony of Angela Roper, the victim's mother, regarding a conversation between Roper and the victim.

10. The petitioner received ineffective assistance of counsel when his trial attorney failed to challenge the testimony of Angela Roper regarding an admission by the petitioner; the attorney should have elicited that the petitioner was not at the location stated by Roper at the time of the alleged admission.

11. The trial court erred in admitting blood sample test results despite defects in the chain of custody.

12. The prosecutor obtained convictions on the basis of testimony known to be false.

13. The petitioner received ineffective assistance of counsel when his trial attorney failed to impeach Angela Roper's testimony that she saw the petitioner assault the victim; the attorney could have impeached Roper with evidence that the petitioner was in another city (McCook, Nebraska) at the time of that alleged assault.

14. The trial court erred in admitting hearsay testimony by Angela Roper.

15. The crime of sexual assault of a child is a lesser included offense of second degree sexual assault on a child; thus, the petitioner's conviction of both offenses violates double jeopardy principles in the circumstances of this case.

16. The petitioner was convicted on a multiplicitous information, in violation of double jeopardy principles.

17. The state failed to prove venue was proper in the trial court.

18. The trial court violated the petitioner's due process and equal protection rights and abused its discretion in finding the petitioner guilty.

19. The trial court violated the petitioner's due process and equal protection rights and abused its discretion in admitting the deposition of Dr. Jacob into evidence.

20. The petitioner received ineffective assistance of counsel when his appellate counsel failed to assign claim nos. 5 through 19 above on direct appeal.

### The Respondent's Answers

In filing no. 14, the respondent asked to be allowed to answer only as to Claim No. 20 of the § 2254 petition, on the theory that all of the other § 2254 claims are barred by procedural default.[2] Subsequently, the respondent pointed out (filing no. 44), that he had yet to respond to the first 19 claims asserted in the petitioner's § 2254 petition, beyond a general allegation that all claims other than Claim No. 20 (ineffective assistance of appellate counsel) are in procedural default. I ordered the respondent to file an Answer addressing the merits of the petitioner's § 2254 claims. The respondent filed an Answer (filing no. 54), although the Answer, despite my order and Rule 5 of the Rules Governing § 2254 Cases ("§ 2254 Rules"), failed to address the petitioner's Claim Nos. 1-19 and simply reiterated procedural default.

### Further Proceedings

In a Progression Order of June 30, 2005 (filing no. 33), I explained "procedural default," "cause and prejudice" to excuse procedural default, the showing required if the petitioner relies on a theory of "fundamental miscarriage of justice," i.e., actual innocence,

---

[2]According to the respondent, the petitioner did not raise his § 2254 claims relating to venue "in a constitutional context" on direct appeal, and he failed to seek further review in the Nebraska Supreme Court on direct appeal. As to the petitioner's claims relating to expert testimony at trial, the respondent contends that the petitioner failed to raise such claims as federal constitutional claims on direct appeal, and the issues have never been presented to the Nebraska Supreme Court. The respondent makes the same arguments as to the petitioner's claims regarding false testimony, hearsay testimony, blood test evidence, Dr. Jacob's testimony, and insufficient evidence to support the convictions, as well as the claims of double jeopardy and deprivation of due process. Regarding the petitioner's claims of ineffective assistance of trial counsel, the respondent asserts that those claims have been found by the Nebraska Court of Appeals to be in procedural default.

to excuse the procedural bar, and finally, the deferential standard of review required by 28 U.S.C. § 2254(d) and (e) for any claim adjudicated on the merits by the Nebraska appellate courts. I directed the parties to file briefs addressing the issues of procedural default, cause and prejudice to excuse any procedural default, the merits of the petitioner's claims, and the deferential standard of review required by 28 U.S.C. § 2254(d) and (e) as applied to the petitioner's § 2254 claims. After various extensions of time and other matters, the parties filed their briefs. While, despite my orders and the § 2254 Rules, the respondent has never addressed the petitioner's Claim Nos. 1-19, I have proceeded on the basis of the record, the applicable law and the petitioner's thorough presentation.

**PROCEDURAL DEFAULT OF CLAIMS ASSIGNED ON DIRECT APPEAL**
**§ 2254 Claim Nos. 1-4**

On direct appeal, the Court of Appeals discussed the following assignments of error: (1) that the trial court erred in finding the petitioner guilty of the crimes charged, because the State failed to prove venue beyond a reasonable doubt; (2) that the trial court erroneously received expert testimony from Dr. Kathy Edwards that the victim contracted herpes type 2 from inappropriate sexual contact; and (3) in overruling the petitioner's objection to Dr. Edwards' expert opinion that the victim had been sexually abused; and (4) that the evidence was insufficient to support the conviction. State v. Coker, 2000 WL 943924 at *1. Those claims correspond to the petitioner's **§ 2254 Claim Nos. 1-4**.

In O'Sullivan v. Boerckel, 526 U.S. 838 (1999), the U.S. Supreme Court explained the habeas exhaustion requirement as follows: "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts ... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before filing for federal habeas relief. Id. at 845. Exhaustion requires that a prisoner "fairly present" the substance of each federal constitutional claim to the state courts before seeking federal habeas relief. Id. at 844. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented in an appeal to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the

petitioner. See Akins v. Kenney, 410 F.3d 451, 454 (8th Cir. 2005). If a habeas claim has not been presented on the merits all the way through the state's appellate review process and is now barred from such presentation, the claim is "procedurally defaulted." Id. at 456 n.1.

While a petitioner is ordinarily entitled to demonstrate cause and prejudice to excuse a procedural default,[3] counsel's failure to seek further review in the Nebraska Supreme Court on direct appeal cannot serve as cause to excuse the procedural default of the petitioner's first four § 2254 claims in this case. The petitioner has not listed that failure as a § 2254 claim in this court or exhausted that claim in the state courts. A federal habeas court is barred from considering an ineffective-assistance-of-counsel claim as "cause" for the procedural default of another claim when the ineffective-assistance claim has itself been inexcusably procedurally defaulted. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Therefore, this court cannot consider whether the petitioner's appellate counsel rendered ineffective assistance by failing to seek further review in the Nebraska Supreme Court on direct appeal. Consequently, the petitioner cannot show cause and prejudice to excuse the procedural default of his **§ 2254 Claim Nos. 1-4** (prosecution's failure to prove venue, trial court errors in admitting expert testimony, and insufficient evidence to support petitioner's conviction). The petitioner's unexcused procedural default of those claims bars habeas review.

## VENUE

**§ 2254 Claim No. 17**

Although the petitioner's first § 2254 claim is barred by procedural default, he has also raised the issue of venue in his **§ 2254 Claim No. 17**. In both instances, the issue turns on whether the evidence at trial sufficiently established that a sexual assault occurred within the narrow period the family lived in Sarpy County, as opposed to Douglas County, Nebraska. In his Claim No. 17, the petitioner focuses on the gestation period for herpes, arguing that the victim could have contracted the condition while residing in Douglas

---

[3] The petitioner does not rely on the other basis for relief from the bar of procedural default, i.e., actual innocence. See generally House v. Bell, 126 S.Ct. 2064 (2006).

6

County, and yet the symptoms would not have appeared until after the move to Sarpy County. Thus, the petitioner emphasizes the absence of sufficiently clear evidence to establish an assault in Sarpy County. I address the venue claims pursuant to 28 U.S.C. § 2254(b)(2) (unexhausted claims may nonetheless be denied on the merits).

The victim specifically testified at trial to sexual acts by the petitioner on two occasions at their Sarpy County home during a time close to Halloween (BOE Vol. I at 106-23) in 1998. While the petitioner has challenged other evidence in the record,[4] he has demonstrated no constitutional infirmity regarding the victim's testimony. That testimony sufficiently established venue in Sarpy County during the relevant time. The record contains sufficient evidence on the element of venue to support the convictions.

## PERJURY

### § 2254 Claim No. 12

The parties took a trial deposition of Chempithra V. Jacob, Ph.D. (trial exhibit 22) regarding the results of a test for herpes conducted on the petitioner's blood sample by Specialty Laboratories of Santa Monica, California. The lab results regarding the petitioner's condition (trial exhibit 25; plaintiff's exhibit 2 to Jacob's deposition) described the plaintiff's exposure to herpes type 2 as "indeterminate."

Dr. Jacob, Technical Director of Specialty Laboratories, after discussing the EIA procedures for testing blood samples for the presence of herpes, testified at page 22 of his deposition that the petitioner's sample showed an "igG" of "49." He then expressed an opinion which the petitioner characterizes as perjury: "[The igG of 49] indicates ... some exposure to herpes type 2 at earliest date. Anytime when you see an igG, that means that patient do have some sort of exposure to herpes 2 at an earlier date. It's not right away. If it is immediate exposure, you will see igM." On page 24 of the deposition, Dr. Jacob

---

[4]As the record contained evidence that both the petitioner and the 7-year old victim had herpes, the petitioner points to evidence that herpes may remain dormant and take as long as two months to appear. However, the trial court expressly credited the expert testimony of Dr. Annamarie Nagy that herpes has a gestation period of only 7-21 days (BOE Vol. II at 506-07), supporting a contagion while the family lived in Sarpy County.

reiterated that the petitioner tested positive for herpes 2, past exposure.[5] The plaintiff characterizes Dr. Jacob's testimony as "false" in light of the lab report stating an "indeterminate" test result for herpes type 2, and the petitioner contends that the prosecution knowingly used the false testimony at trial.[6]

In Giglio v. United States, 405 U.S. 150 (1972), the U.S. Supreme Court held that prosecutors may not permit testimony they know to be false to stand uncorrected, if "'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury.'" Id. at 154, *quoting* Napue v. Illinois, 360 U.S. 264, 271 (1959). In Giglio, the government's principal witness testified falsely on cross-examination that he had received no promise of immunity from prosecution. The prosecutor failed to correct the perjury and, in fact, repeated the falsehood in closing argument. The Supreme Court reversed the defendant's conviction because of the reasonable likelihood that the prosecutor's knowing use of perjury on an issue relevant to the witness' credibility affected the jury's decision and thus deprived the defendant of due process. Giglio, 405 U.S. at 154-55.

However, not all inconsistencies amount to perjury. See, e.g., United States v. Dunnigan, 507 U.S. 87, 94 (1993) (a witness does not commit perjury if inconsistencies in testimony are not intentional but rather the "result of confusion, mistake, or faulty memory"). Accord United States v. Stokes, 211 F.3d 1039, 1045 (7th Cir. 2000): "In determining what constitutes perjury, courts have previously relied upon the definition that has gained general acceptance and common understanding under the criminal perjury statute, 18 U.S.C. § 1621: "A witness testifying under oath or affirmation violates this

---

[5] Dr. Jacob also testified, at pages 23-34, that the plaintiff tested positive for herpes type 1.

[6] Not having raised the claim on direct appeal, the petitioner could not obtain postconviction review of **§ 2254 Claim No. 12** and the other claims he failed to raise on direct appeal. Under Nebraska law, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." State v. Lotter, 664 N.W.2d 892, 922 (Neb. 2003). Accord Hall v. State, 646 N.W.2d 572, 579 (Neb. 2002). Generally, a claim must be raised at the earliest opportunity to avoid a subsequent bar. I address the perjury claim pursuant to 28 U.S.C. § 2254(b)(2), which authorizes review of a claim on the merits, under limited circumstances, despite defects in exhaustion.

statute if he or she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory."

In this case, Dr. Jacob provided his technical medical interpretation of laboratory test results based on the presence of antibodies in the petitioner's blood. The meaning of "indeterminate" is less than clear, and the testimony to which the plaintiff objects was opinion rather than factual representation. The trial judge received both the deposition and the lab report as evidence and could compare them. I conclude that the petitioner has failed to demonstrate that Dr. Jacob lied in any respect and that the prosecution knowingly made use of false testimony.

**INEFFECTIVE ASSISTANCE OF APPELLATE and TRIAL COUNSEL**
**§ 2254 Claim No. 20 and Claim Nos. 5-10 & 13**

The Nebraska courts adjudicated the petitioner's **§ 2254 Claim No. 20** on the merits. Thus, my consideration of that claim is circumscribed by 28 U.S.C. § 2254(d) and (e), which limit federal court review of habeas corpus claims adjudicated on the merits in the state courts. Under 28 U.S.C. § 2254(d) and (e)(1), I may decide only if the Nebraska courts unreasonably or incorrectly applied U.S. Supreme Court precedent or unreasonably determined the facts in light of the record.

28 U.S.C. § 2254(d) states:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1):

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption

9

of correctness by clear and convincing evidence.

As for 28 U.S.C. § 2254(d)(1), "[t]he Supreme Court has explained the independent meanings of the 'contrary to' and 'unreasonable application' clauses .... A state court decision is 'contrary to' the Supreme Court's clearly established precedent if the state court either 'arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law' or 'decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts.'... A state court decision is an 'unreasonable application' of Supreme Court precedent if it 'identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'... 'A federal court may not issue the writ simply because it "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."'" Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006) (citations omitted).

28 U.S.C. § 2254(d)(2) must be read together with 28 U.S.C. § 2254(e)(1). "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 324 (2003).

On postconviction appeal, the Nebraska Court of Appeals reviewed the petitioner's claims of ineffective assistance of trial counsel in the course of determining whether the petitioner had suffered prejudice from his appellate attorney's failure to raise those claims on direct appeal. Thus, the Court of Appeals directly addressed the subject matter of the following claims:

1. **§ 2254 Claim No. 5** - Trial counsel was ineffective by failing to refute the "false" deposition testimony of Dr. Jacob that the petitioner tested positive for herpes type 2, whereas laboratory test results were "indeterminate" (filing no. 14-6 at 8-10).

2. **§ 2254 Claim No. 6** - Trial counsel was ineffective by failing to object to the use of trial exhibit 17, despite mishandling of the exhibit, i.e., use of the exhibit after it temporarily

10

left the courtroom in the possession of a witness (filing no. 14-6 at 10-11).

3.     **§ 2254 Claim No. 7** - Trial counsel was ineffective by failing to familiarize himself with Dr. Jacob's deposition, taken by a colleague, and by failing to object to Jacob's testimony about the herpes test results (filing no. 14-6 at 11-12).

4.     **§ 2254 Claim No. 8** - Trial counsel was ineffective by failing to investigate various matters, including the petitioner's employment records (filing no. 14-6 at 12-14).

5.      **§ 2254 Claim No. 9** - Trial counsel was ineffective by failing to raise a hearsay objection to the testimony of Angela Roper, the victim's mother, regarding a conversation between Roper and the victim (filing no. 14-6 at 14-15).

6.     **§ 2254 Claim Nos. 10 & 13** - Trial counsel was ineffective by failing to challenge Angela Roper's testimony regarding alleged prior assaults of the victim, in particular by failing to elicit testimony, point out inconsistencies or impeach Roper on matters such as that the petitioner was in a different location during one assault of the victim alleged by Roper (filing no. 14-6 at 15-16).

Therefore, as to the petitioner's **§ 2254 Claim No. 20**, the issue in this court is whether the Nebraska courts, in adjudicating the merits of the claim, (1) produced a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the U.S. Supreme Court, or (2) based its decision on an unreasonable factual determination in light of the evidence in the record. Because the Nebraska appellate courts chose to review the substance of the petitioner's **§ 2254 Claim Nos. 5-10 & 13**, this court, too, will reach those claims, applying the same standard of review required by 28 U.S.C. § 2254(d) and (e) to all of the petitioner's claims of ineffective assistance of counsel.

Although the Federal Constitution imposes on the states no obligation to provide appellate review of criminal convictions, states which offer such appellate review must appoint counsel to represent indigent defendants in their first appeals as of right. Halbert v. Michigan, 125 S.Ct. 2582, 2586-94 (2005). The Due Process and Equal Protection Clauses of the United States Constitution require the courts to afford a criminal appellant pursuing a first appeal as of right the minimum safeguards necessary to make that appeal adequate and effective. Halbert v. Michigan, 125 S.Ct. at 2586-87; Smith v. Robbins, 528

U.S. 259, 276 (2000); Evitts v. Lucey, 469 U.S. 387, 392 (1985).

In addition, the Sixth Amendment guarantees that an accused shall have "the Assistance of Counsel for his defense." U.S. Const. amend. VI. "It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate ... and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." Mickens v. Taylor, 535 U.S. 162, 166 (2002), *citing* Strickland v. Washington, 466 U.S. 668, 685-86 (1984).

Pursuant to the test articulated in Strickland v. Washington, 466 U.S. at 687, a habeas petitioner must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defense. If counsel's performance was not deficient or if the petitioner suffered no prejudice, the court need not address the other part of the test. See, e.g., Williams v. Locke, 403 F.3d 1022, 1025 (8th Cir. 2005) ("we need not ask whether [the] lawyer's performance was deficient if we can clearly determine that no prejudice resulted from [the] lawyer's alleged error"). See also Whitehead v. Dormire, 340 F.3d 532, 537 (8th Cir. 2003) ("a court deciding an ineffective assistance claim need not address both components of the inquiry if the defendant makes an insufficient showing on one"). Accord Siers v. Weber, 259 F.3d 969, 974 (8th Cir. 2001), cert. denied, 534 U.S. 1138 (2002).

Regarding counsel's "failure to refute Dr. Jacob's testimony that the petitioner tested positive for herpes type 2" when the lab results in fact were "indeterminate" (**§ 2254 Claim No. 5**), the Court of Appeals noted other evidence before the trial judge which clearly explained the lab results and which the trial judge expressly considered. In addition, Dr. Jacob's deposition included counsel's cross-examination, and the trial court admitted the deposition over counsel's objection. Thus, the Court of Appeals found no deficiency in the attorney's performance related to the alleged inconsistency between Dr. Jacob's testimony and the lab results.

As for trial exhibit 17, a document which a witness inadvertently removed from the courtroom for a short period after testifying, the Court of Appeals characterized as "purely speculative" the petitioner's contention that the exhibit would have been stricken if his attorney had objected to it upon its return to the courtroom. In addition, among the exhibits

in the postconviction transcript is a letter dated January 18, 2000, from the petitioner's trial attorney to counsel for the Nebraska State Bar Association Office of Discipline, in response to a complaint filed by the petitioner. In the letter, the petitioner's trial attorney explained his reasoning underlying 14 decisions made at trial. As to **§ 2254 Claim No. 6**, i.e., counsel's decision not to object to the use of trial exhibit 17 after it temporarily left the courtroom, the attorney explained: "Any objection could have been cured by a series of questions by the prosecutor asking the witness if he altered the exhibit. An exercise in futility." (See postconviction transcript at 71.) That explanation makes sense and bolsters the Court of Appeals' conclusion that the attorney's decision to waive objection to trial exhibit 17 after the exhibit returned to the courtroom did not constitute ineffective representation.

Regarding **§ 2254 Claim No. 7**, the Court of Appeals found no deficiency and no prejudice from trial counsel's delegation of Dr. Jacob's deposition to a colleague. The court also found no evidence that the colleague failed to represent the petitioner adequately at the deposition or that trial counsel failed to read the deposition transcript. In addition, trial counsel renewed the deposition objections when the State offered the deposition at trial.

As for counsel's failure to investigate the petitioner's employment records, the Court of Appeals referred to trial counsel's letter of January 18, 2000, to the Bar Association Office of Discipline (postconviction transcript at 70). The attorney addressed the subject matter of **§ 2254 Claim No. 8**, disagreeing that the petitioner's employment records would have furnished any alibi. As the attorney pointed out: "Mr. Coker admitted that he was present and picked up the child on the one occasion that his wife said there was opportunity in Bellevue [Sarpy County] for a sexual assault. What does the work schedule prove?" By deterring the petitioner from pursuing a futile avenue of inquiry or objection, his trial attorney appears to have prevented, rather than caused, prejudice to the petitioner. The Court of Appeals declined to second-guess reasonable trial strategy.

Regarding counsel's failure to object to hearsay testimony by Angela Roper, the victim's mother (**§ 2254 Claim No. 9**), the Court of Appeals found the element of prejudice missing. To establish prejudice, a petitioner must affirmatively demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

13

have been different." Strickland v. Washington, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Court of Appeals could not find any such probability. As for Roper's allegedly inconsistent and false testimony (**§ 2254 Claim Nos. 10 & 13**), the Court of Appeals found neither deficient performance by trial counsel nor prejudice to the petitioner from counsel's representation. In fact, the court found little inconsistency in Roper's testimony.

With respect to the petitioner's **§ 2254 Claim Nos. 5-10 & 13**, the Nebraska postconviction courts applied the correct legal standard, citing Strickland v. Washington, and Nebraska cases applying Strickland v. Washington, e.g., State v. Billups, 641 N.W.2d 71 (Neb. 2002); State v. Palmer, 600 N.W.2d 756 (Neb. 1999); State v. Davis, 577 N.W.2d 763 (Neb. App.1998); State v. Hansen, 562 N.W.2d 840 (Neb. 1997).

I have thoroughly reviewed the record in light of the petitioner's arguments, and I find no support for the view that the state postconviction courts arrived at a decision contrary to clearly established Supreme Court law, or that the state courts unreasonably applied the principles of Strickland v. Washington to the facts of the petitioner's case, 28 U.S.C. § 2254(d)(1). Nor has he shown that the Nebraska courts reached an unreasonable determination of any material facts in light of the evidence presented at trial, 28 U.S.C. § 2254(d)(2) and (e)(1).

Having found that the substance of each of the petitioner's **§ 2254 Claim Nos. 5-10 & 13** of ineffective assistance of trial counsel lacked merit, either because trial counsel performed adequately or the petitioner suffered no prejudice, the Court of Appeals determined that no prejudice resulted from appellate counsel's failure to raise those claims on direct appeal (**§ 2254 Claim No. 20**). That conclusion also is not contrary to clearly established Supreme Court law or an unreasonable application of clearly established Supreme Court decisions.[7] The petitioner has not shown that he received prejudicial ineffective assistance of counsel either at trial or on direct appeal.

---

[7]Ironically, even if the petitioner had raised **§ 2254 Claim Nos. 5-10 & 13** on direct appeal, all claims raised on direct appeal became procedurally defaulted, for purposes of habeas corpus consideration in this court, when the petitioner failed to seek further review in the Nebraska Supreme Court on direct appeal.

**EVIDENTIARY ERRORS**

**§ 2254 Claim Nos. 11, 14 & 19**

The petitioner has vehemently argued that his § 2254 Claim Nos. 5-19 were preserved through § 2254 Claim No. 20, his claim of ineffective assistance of appellate counsel. I agree with him as to his claims of ineffective assistance of trial counsel (§ 2254 Claim Nos. 5-10 & 13) because the postconviction courts reached those claims in adjudicating § 2254 Claim No. 20. The remaining § 2254 Claim Nos. 11, 12 and 14-19 could have been raised on direct appeal but were not. They are procedurally defaulted because the petitioner failed to raise them on direct appeal, and the petitioner has failed to demonstrate a basis to excuse the procedural default. Furthermore, even if § 2254 Claim Nos. 11, 12 and 14-19 had been included on direct appeal, all claims raised on direct appeal were procedurally defaulted for purposes of habeas consideration in this court, as the petitioner failed to seek further review in the Nebraska Supreme Court on direct appeal. Nevertheless, pursuant to 28 U.S.C. § 2254(b)(2), I address **§ 2254 Claim Nos. 11, 14 & 19**, which relate to evidentiary rulings by the trial court.

Federal courts may grant habeas corpus relief under § 2254 only when there has been a violation of federal statutory or constitutional law. Insofar as the petitioner challenges the admissibility, under state law, of evidence during his trial, he is not entitled to habeas corpus relief. See, e.g., Harrison v. Dahm, 880 F.2d 999, 1001 (8th Cir. 1989): "'[Q]uestions relating to the admissibility of evidence are matters of state law and generally do not give rise to constitutional errors which are subject to redress in federal habeas corpus cases.'" Accord Glaze v. Redman, 986 F.2d 1192, 1195 (8th Cir. 1993): "'Federal courts are not forums in which to relitigate state trials.' ... Questions of admissibility of evidence in state trials are matters of state law and ordinarily are not grounds for federal habeas relief." (Citations omitted.)

"A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." Bounds v. Delo, 151 F.3d 1116, 1119 (8th Cir. 1998) (citations omitted). Accord Robinson v. LaFleur, 225 F.3d 950, 954 (8th Cir. 2000) (a state court's evidentiary rulings warrant

15

federal habeas relief under the Due Process Clause only when the error was so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the petitioner of due process). In this case, the petitioner has not demonstrated prejudice of constitutional magnitude, and so his **§ 2254 Claim Nos. 11, 14 & 19** are denied on two bases. First, those claims are barred by procedural default. Second, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

### MULTIPLICITY, DOUBLE JEOPARDY and INCONSISTENCY
### § 2254 Claim Nos. 15, 16 & 18

As the state court explained to the plaintiff at arraignment (BOE Vol. I at 6-7), the elements of the charged offenses were as follows:

(Count I) First degree sexual assault on a child

1. sexual penetration
2. perpetrator 19 year of age or older, and
3. victim less than 16 years of age;

(Count 2) Second degree sexual assault on a child

1. sexual contact by perpetrator who knew or should have known the victim was physically or mentally incapable of resisting or appraising the nature of her conduct, and
2. causing serious personal injury to the victim;

(Counts 3 and 4) Sexual assault on a child (contact)

1. sexual contact
2. perpetrator 19 year of age or older, and
3. victim 14 years of age or younger.

See Neb. Rev. Stat. §§ 28-319(1)(c); 28-320(1)(b) and (2); 28-320.01. See also Neb. Rev. Stat. § 28-318: "As used in sections 28-317 to 28-321, unless the context otherwise requires:... (4) Serious personal injury means great bodily injury or disfigurement, extreme mental anguish or mental trauma, pregnancy, **disease**, or loss or impairment of a sexual or reproductive organ...." (Emphasis added.) Also, Neb. Rev. Stat. § 28-318(5) defined

"Sexual contact" as:

> the intentional touching of the victim's sexual or intimate parts or the intentional touching of the victim's clothing covering the immediate area of the victim's sexual or intimate parts. Sexual contact shall also mean the touching by the victim of the actor's sexual or intimate parts or the clothing covering the immediate area of the actor's sexual or intimate parts when such touching is intentionally caused by the actor. Sexual contact shall include only such conduct which can be reasonably construed as being for the purpose of sexual arousal or gratification of either party. Sexual contact shall also include the touching of a child with the actor's sexual or intimate parts on any part of the child's body for purposes of sexual assault of a child under section 28-320.01.

The petitioner argues (**§ 2254 Claim No. 18**) that his acquittal on Count I of the Information, the charge of first degree sexual assault, involving penetration, necessitated dismissal of Count II, the charge of second degree sexual assault, involving disease (serious personal injury), for the same reason. The trial court dismissed Count I because of insufficient evidence that the victim's vaginal tear, evidencing penetration, had occurred within the period in which venue existed in Sarpy County, Nebraska. The petitioner argues that the only incident of assault in Sarpy County the prosecution could have established occurred on October 26, 1998, and the incubation period for herpes 2 could have been as long as two months, leaving Count II susceptible to the same infirmity as Count I. However, the trial court expressly credited and relied upon the testimony of expert witness Dr. Nagy regarding the 7-21 day incubation period for herpes, whereas the vaginal tear could have been as much as 6 weeks old. On that basis the trial court found that the State had sustained its burden of proof beyond a reasonable doubt as to Count II, but not as to Count I. (See BOE Vol. II at 506-07.)  Thus, the petitioner's **§ 2254 Claim No. 18**, is denied as procedurally defaulted, and, in the alternative, on the merits. See 28 U.S.C. § 2254(b)(2).

Next, the petitioner alleges that he was subjected to double jeopardy because Count IV, sexual assault of a child (contact), is a lesser included offense of Count II, second degree sexual assault of a child. See Neb. Rev. Stat. § 28-320.01(1):  A person commits sexual assault of a child if he or she subjects another person fourteen years of age or younger to sexual contact and the actor is at least nineteen years of age or older.

17

The Double Jeopardy Clause, among other prohibitions, bars multiple punishments for the same offense. For the traditional test regarding the "same offense," see Blockburger v. United States, 284 U.S. 299, 304 (1932): "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Thus, cumulative punishments for substantially the same or nominally distinct offenses arising out of the same transaction are barred unless each offense contains an element not contained in the other.

Similarly, convicting a defendant of both a greater and a lesser-included offense based on the *same criminal act* constitutes multiple punishments for the same crime, so as to implicate the Double Jeopardy Clause. The same is true, of course, under Nebraska law. See, e.g., State v. Nissen, 560 N.W.2d 157, 178 (Neb. 1997). However, as the trial court pointed out, the victim in this case was subjected to multiple acts, i.e., many different *forms* of sexual contact in the Sarpy County incident(s), and, thus, multiple offenses. (See BOE Vol. II at 508.) The record indicates, without limitation, intentional touching, oral sex, rubbing of body parts, and other varieties of conduct leading to sexual arousal, gratification and ejaculation by the perpetrator. Although some varieties of the contact may not have qualified as second degree sexual assault because serious bodily injury may not have resulted, those sexual contacts nonetheless constituted separate criminal offenses in their own right and were not wholly subsumed within Count II. (Id.)

A federal court may not review a state court's determination of its own law. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). See also Taylor v. Bowersox, 329 F.3d 963 (8th Cir. 2003), cert. denied, 541 U.S. 947 (2004). "A state's interpretation of its own law is virtually unreviewable by a federal court." Id., 329 F.3d at 968. Accord Davidson v. Bowersox, 288 F.3d 1076 (8th Cir.), cert. denied, 537 U.S. 925 (2002). "It is not within the prerogative of a federal habeas court to question a state court's interpretation of its state's law ...." Id., 288 F.3d at 1078. Thus, the petitioner's **§ 2254 Claim Nos. 15 & 16** must be denied. See 28 U.S.C. § 2254(b)(2).

I do not review these matters de novo.  On collateral review in the federal courts, the petitioner does not receive a new trial.  His claims deserve attention, but they are filtered through a standard of review which is deferential to the state courts.  In essence, I review whether the petitioner received a trial which did or did not violate the Constitution of the United States.  The Constitution is not violated by violations of state law, mere evidentiary rulings and imperfect trial strategy by his attorney.

I appreciate the petitioner's thorough and thoughtful analysis throughout this litigation, which provided considerable assistance to the court in understanding the issues in this case.  Although, in my view, the law does not permit a favorable outcome for the petitioner, the quality of his work deserves mention.

The Petition for Writ of Habeas Corpus filed by Amikhet En Matti, f/k/a Warren S. Coker, is denied. A separate judgment will be entered dismissing this action with prejudice.

July 31, 2006.                        BY THE COURT:

                                      s/ *Richard G. Kopf*
                                      United States District Judge